**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 3721, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 88–225.**

District of Columbia Court of Appeals.

Argued June 15, 1989.
Decided Sept. 8, 1989.

Beth S. Slavet, Washington, D.C., with whom Stephen H. Behnke was on the brief, for appellant.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and TERRY, Associate Judges.

FERREN, Associate Judge:

Appellant, American Federation of Government Employees, Local 3721 (AFGE), and appellee, the District of Columbia, through its Fire Department, entered into a collective bargaining agreement in November 1984. In February 1987, the Fire Department notified Russell Jones, a probationary employee, that his employment would be terminated. Jones, through AFGE, filed a grievance challenging his termination. AFGE demanded arbitration as part of the grievance procedure, and the Fire Department sought a stay of arbitration in Superior Court pursuant to D.C.Code § 16–4302(b) (1981). AFGE filed a cross motion to deny the application for stay and to order arbitration. The trial court, finding "no agreement between the parties herein to arbitrate the dispute at issue," granted the motion to stay arbitration. Appellant argues on appeal that the trial court ignored the presumption of arbitrability that governs interpretation of labor agreements and thus applied the wrong legal standard. Concurring with the trial court that the parties did not agree to arbitrate this dispute, we affirm.

I.

Relying on *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960), a federal labor law case, AFGE contends that the trial court should have determined whether the reference in the agreement to arbitration was "susceptible of an interpretation"

that would cover the dispute at issue and, if so, should have ordered arbitration. In response, the District of Columbia argues that AFGE should be required to show more—to show that the parties affirmatively agreed to arbitrate this particular kind of dispute—before arbitration can be ordered. AFGE states the correct approach.

Under District of Columbia law, when deciding whether to order arbitration, the trial court must determine as a matter of law whether the parties agreed to arbitrate the particular dispute at issue. *See Poire v. Kaplan,* 491 A.2d 529, 533 (D.C. 1985); *see also AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Where there is an arbitration clause in a contract, there is a "presumption of arbitrability" concerning the dispute at issue, *see Carter v. Cathedral Ave. Coop.,* No. 88–177 at 4–5 (D.C. Aug. 31, 1989); any ambiguity as to whether the arbitration provision covers a dispute is resolved in favor of arbitration. *See Sindler v. Batleman,* 416 A.2d 238, 243 (D.C.1980); *Poire,* 491 A.2d at 534 n. 8.

In *Warrior & Gulf Navigation Co.,* the Supreme Court, in the context of federal labor law, established principles for interpreting arbitration clauses. The Court noted, first, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." 363 U.S. at 582, 80 S.Ct. at 1353. The Court then wrote that because of the strong federal labor policy in favor of arbitration,

> [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* at 582–83, 80 S.Ct. at 1353 (footnote omitted). The Supreme Court then interpreted the grievance arbitration clause at issue, which encompassed all "differences" between the Company and the Union "as to

the meaning and application of the provisions of this Agreement" and "any local trouble of any kind." *Id.* at 576, 80 S.Ct. at 1349. "[M]atters which are strictly a function of management" were excluded from arbitration. *Id.* In interpreting this provision, the Court wrote:

> In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.

*Id.* at 584–85, 80 S.Ct. at 1354.

Recently, this court adopted the principles of interpretation established in *Warrior & Gulf Navigation Co.*, invoked the presumption of arbitrability, and held that the particular arbitration clause at issue embraced the dispute. *See Carter*, slip op. at 4–5. Accordingly, we must determine whether the arbitration clause in the agreement between the Fire Department and AFGE is "susceptible of an interpretation" that covers the dispute at issue.

## II.

■ Two provisions of the agreement are relevant here. Article 34 sets forth the grievance procedure, which includes arbitration, defining a grievance as "any alleged violation or any misapplication or misinterpretation of this Agreement, or any misapplication or misinterpretation of existing Personnel Rules and Regulations that affect terms and conditions of employment." This section, however, specifically excludes "management rights" from the grievance procedure. Article 3 defines "Management Rights." It broadly states that the Fire Department retains "all rights and authority held by the Employer prior to the signing of this Agreement" and that these rights are not subject to arbitration "unless specifically abridged and abrogated in a separate distinctive article of this Agreement." Article 3, moreover, specifically defines some "management rights," including the right to "hire, promote, transfer, assign, and retain employ-

ees in positions within the Department," and the right to "suspend, demote, discharge, ... and take other disciplinary actions against employees for cause."

We conclude that the arbitration clause is not susceptible of an interpretation that covers disputes concerning the termination of probationary employees. The arbitration clause in the agreement between AFGE and the Fire Department differs significantly from the arbitration clauses at issue in *Warrior & Gulf Navigation Co.* and in *Carter.* The clause in *Warrior & Gulf Navigation Co.* encompassed all differences in interpretation of the labor agreement and any local trouble of any kind while excluding arbitration of management rights, without defining them. The more restrictive arbitration provisions in *Carter* limited arbitration to certain specified areas of dispute but subjected to arbitration any issue falling within those areas. In contrast, the agreement between AFGE and the Fire Department broadly retains for management all preexisting rights and, further, excludes from arbitration all management rights unless those rights are "specifically abridged and abrogated in a separate distinctive article of the Agreement."

■ AFGE argues that this exclusion clause is ambiguous, that the presumption of arbitrability thus applies, and that, because the exclusion clause does not specifically exempt disputes about terminations of probationary employees from arbitration, these disputes are accordingly subject to arbitration. AFGE argues, more specifically, that while permanent employees who may be fired only for "cause," D.C.Code § 1–617.1(b) (1987), have no right to arbitration, probationary employees may have some lesser rights than discharge for cause that are not specifically retained by the Fire Department and thus are not excluded from arbitration. This argument is strengthened, it is said, because management's specified right to "retain" employees is too ambiguous to suggest a right to discharge probationary employees.

We cannot agree with AFGE's position. Under the terms of the agreement, the Fire

Department retains all its rights as of the time the agreement was signed, which necessarily includes all rights under the federal personnel regulations in effect on that date.[1] The regulations in effect when the agreement was signed, *see* 5 C.F.R. §§ 315.801–.806 (1988) (federal regulations unchanged since 1980), provide for termination of a probationary employee during the probationary period with written notice. *See id.* § 315.804. The employee's appeal rights are limited to claims of discriminatory discharge. *Id.* § 315.806.[2] Because no clause in the agreement specifically abridged these regulations, and there is no claim that the Fire Department did not give Jones written notice of termination, we find no room to argue that the exclusion clause does not cover the discharge of a probationary employee. Management's explicit rights to "retain" employees and to "discharge" nonprobationary employees "for cause" must be said to enhance, not abridge or abrogate, the clear, general provision preserving "all rights held by the Employer prior to the signing of this Agreement." Accordingly, the agreement must be read to include a provision not to arbitrate disputes governing the termination of probationary employees; it is susceptible of no other interpretation.

In sum, we agree that the parties did not agree to arbitrate disputes concerning the termination of probationary employees and that the trial court, therefore, properly stayed arbitration.

*Affirmed.*

---

1. At the time the agreement was signed, November 28, 1984, and approved by the Mayor, December 28, 1984, no District of Columbia personnel regulations had been issued governing probationary employees. Therefore, under D.C. Code § 1–633.1(a) (1987), the federal personnel regulations governing probationary employees were in effect.

2. This section provides an additional ground of appeal for employees terminated during a probationary period for reasons arising before the probationary appointment where there was a failure of compliance with the special procedures for such a discharge. *See* 5 C.F.R. §§ 315.805, 315.806(c) (1988). This claim is not applicable to Jones because he was discharged during the probationary period for his first appointment in the department.